**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny W. Pyle; and Patricia A. Pyle, wife,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Bank NA, a national banking association trustee of Harborview 2006-4 Trust Fund; ReconTrust Company, NA, a national banking association; Bank of America, NA, a national banking association,<br><br>Defendants. | No. CV-12-02199-PHX-GMS<br><br>**ORDER** |

Defendants have moved to dismiss (Doc. 20) the Amended Complaint (Doc. 15) filed by Plaintiffs Johnny and Patricia Pyle. For reasons specified below, the Court grants in part and denies in part the Motion.[1]

**BACKGROUND[2]**

The Pyles took out a loan of $731,000.00 from Equity 1 Lenders Group on February 10, 2006, to finance a purchase of real estate located at 3945 East Leland Street

---

[1] Plaintiffs' request for oral argument is denied because the Parties have had an adequate opportunity to discuss the law, and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] The Court takes as true the allegations contained in the Pyles' Amended Complaint at this stage of the litigation. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996)

in Mesa, Arizona. (Doc. 15 ¶ 1; Doc. 20-1, Ex. A.)[3] They secured that loan through a Deed of Trust. (Doc. 20-1, Ex. A.)

As the real estate market collapsed across the country, the Pyles and the company that was then servicing their loan—BAC Home Loans Servicing—discussed a loan modification agreement. (Doc. 15 ¶ 5; Doc. 1-1, Ex. A at "Ex. A.")[4] The Pyles and BAC Home Loans agreed on a loan modification in March of 2010. (Doc. 15 ¶ 5.) The Pyles signed the agreement on March 3, 2010, and returned it to BAC. (Doc. 1-1, Ex. A at "Ex. A.") The Loan Modification Agreement does not contain a signature from BAC. (*Id.*) The Agreement set the monthly payment from April 2010–April 2012 at $2,068.45. (*Id.*)

The Pyles began making monthly payments at the rate specified in the Modification Agreement. (Doc. 15 ¶ 6.) BAC accepted 14 payments beginning in April 2010. (*Id.*) After that, however, BAC began rejecting those payments and returning them to the Pyles. (*Id.* ¶ 7.) BAC returned the next 11 payments and claimed instead that the amount due was the payment required under the terms of the original loan ($3,413.10). (*Id.* ¶¶ 7–8.) BAC then instructed the Pyles not to send any further monthly payments. (*Id.* ¶ 7.)

Meanwhile, back on June 8, 2011, MERS, as nominee for Equity 1 Lenders, had assigned its beneficial interest under the Deed of Trust to BAC. (Doc. 20-1, Ex. C.) At some point, Bank of America, as successor by merger to BAC, assigned the beneficial interest to Defendant U.S. Bank NA. (Doc. 15 ¶ 3.) On April 18, 2012, US Bank

---

[3] The Court takes judicial notice of the Deed of Trust, Assignment of Deed of Trust, Notice of Trustee's Sale, Substitution of Trustee, and Loan Modification Agreement because they are "matters of public record outside the pleadings," *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991), or **Error! Main Document Only.**documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,"*Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original).

[4] Throughout their papers, the Parties refer to the Loan Modification Agreement as "Ex. A" to the Amended Complaint. There is no exhibit attached to the Amended Complaint. The Court assumes that the document described as "Ex. A" attached to the original Complaint is the document to which the Parties refer.

substituted Defendant ReconTrust Company, NA, as the trustee under the Deed of Trust. (Doc. 20-1, Ex. D.) The next day, ReconTrust noticed the property for a Trustee's Sale to take place on July 26, 2012. (*Id.*, Ex. E.) That sale has not yet occurred, and by stipulation of the Parties, a litigation hold has been placed on it. (Docs. 17, 18.)

The Pyles filed suit in Superior Court on September 20, 2012. (Doc. 1-1.) Defendants removed the suit to federal court on October 12. (Doc. 1.) On February 28, 2013, the Pyles voluntarily dismissed Bank of America as a party and filed their Amended Complaint. (Docs. 14, 15.) They seek declaratory and injunctive relief and assert that Defendants violated their covenant of good faith and fair dealing. (Doc. 15.) Defendants moved to dismiss the Amended Complaint on March 18, 2013. (Doc. 20.)

## DISCUSSION

### I. LEGAL STANDARD

Rule 12(b)(6) is designed to "test the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. ANALYSIS

The Pyles' claims for declaratory and injunctive relief rest on the validity of the Modification Agreement. The Court must therefore determine whether the allegations of the Amended Complaint and the documents attached thereto support the Pyles claim that the original agreement was modified to allow for a reduced monthly payment. Defendants claim that the Statute of Frauds applies and makes any alleged Modification Agreement unenforceable.

### A. Statute of Frauds

Arizona's statute of frauds provides that

> [n]o action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized . . . Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing, subscribed by the party sought to be charged.

Ariz. Rev. Stat. § 44-101(6). A mortgage is an interest in real property for purposes of the statute of frauds. *Fremming Const. Co. v. Sec. Sav. & Loan Ass'n*, 566 P.2d 315, 317 (Ariz. Ct. App. 1977). The same goes for any modification of the terms of a mortgage loan. *See Diaz-Amador v. Wells Fargo Home Mortgages*, 856 F. Supp. 2d 1074, 1080 (D. Ariz. 2012); *Best v. Edwards*, 176 P.3d 695 (Ariz. Ct. App. 2008); *Executive Towers v. Leonard*, 439 P.2d 303 (Ariz. Ct. App. 1968).

The alleged Modification Agreement fails to satisfy the statute of frauds. To the extent the Pyles rely on the document that purports to modify the Parties' obligations under the original Loan Agreement, it is "an agreement for . . . the sale of real property or an interest therein," and consequently falls within the ambit of the statute. Ariz. Rev. Stat. § 44-101(6). That document fails to satisfy the statute of frauds because it is not "signed by the party to be charged, or by some person by him thereunto lawfully authorized." *Id.* Thus, "[n]o action [can] be brought in any court" on the contract. *Id.* To the extent the Pyles rely on their oral conversations with representatives of US Bank, that oral agreement also fails to satisfy the statute. (Doc. 15 ¶ 5.)

Arizona courts, however, have long recognized an exception to the statute's strictures in the doctrine of part performance. *See, e.g.*, *Latimer v. Hamill*, 52 P. 364, 366 (Ariz. 1898). The exception exists because a statute intended to prevent fraud must also avoid becoming the vehicle for its perpetration. *Trollope v. Koerner*, 470 P.2d 91, 97 (Ariz. 1970). The doctrine of part performance "is grounded in the equitable principle of estoppel." *Owens v. M.E. Schepp Ltd. P'ship*, 182 P.3d 664, 668 (Ariz. 2008). Thus, the plaintiff must allege that the relevant acts were "undertaken in reliance on the agreement." *Id.* (citing Restatement (Second) of Contracts § 129 cmt. a; 4 Corbin on Contracts § 18.7, at 513–14; Restatement (First) of Contracts § 197 cmt. b (1932)). That reliance must also be real and detrimental—a "substantial and material change of position" for the party asserting part performance. *Weiner v. Romley*, 94 Ariz. 40, 45, 381 P.2d 581, 584 (1963); *Diaz-Amador*, 856 F. Supp. 2d at 1080 n.4.

Defendants do not address this exception. The sole basis for their attack on the legal validity of the Pyles' claim is the absence of a "writing signed by Bank of America." (Doc. 20 at 3.) Contrary to Defendants' contention, however, the absence of a signed writing is not fatal. The Pyles have at least alleged a claim for part performance in their Complaint. They describe how they orally agreed with BAC Home Loans on a loan modification, they began making payments for 14 months at the rate agreed upon, and those payments were accepted. (Doc. 15 ¶¶ 5–6.) This is at least a colorable claim of part

performance, which serves to excuse the absence of a signed writing.

### C. Injunctive and Declaratory Relief

The Pyles' assert claims for injunctive and declaratory relief.[5] To obtain injunctive relief, the Pyles will have to show "that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat't Res. Def. Council*, 555 U.S. 7, 22 (2008); *see* Fed. R. Civ. P. 65. (emphasis in original); *eBay, Inc. v. Mercexchange, LLC*, 547 U.S. 388, 391 (2006) (applying the same standard for permanent injunction, but requiring actual success on the merits instead of likely success). Defendants claim that the Pyles' SAC fails to state a claim for injunctive relief because it is unlikely the Pyles will succeed on the merits. The sole argument the Defendants advance is that the absence of a signed writing operates as a total bar on the Pyles' claim. For the reasons discussed above, the Pyles have at least alleged part performance and therefore potentially can avoid the statute of frauds. Defendants also claim that the Pyles cannot show that an injunction would be in the public interest because the Pyles are "indisputably in default of their mortgage obligations." That argument raises a question of fact that the Court does not resolve at this stage. Defendants' similar arguments for why the Pyles fail to state a claim for declaratory relief also fall short.

### D. Breach of the Duty of Good Faith

The Pyles also bring a damages claim against Defendants for the tort of bad faith. They claim that "BofA, acting . . . as agent for US Bank, violated its implied covenant, obligation and duty of good faith and fair dealing under the original loan by the bad faith refusal to execute the Loan Modification Agreement, by instituting an improper non-judicial foreclosure, and then by its rejection of proper payments by Plaintiffs under the Loan Modification Agreement . . . ." (Doc. 15, Count III at (a).) "Arizona law implies a

---

[5] The Pyles have not moved for a preliminary injunction to this point, and the Court expresses no opinion on the merits of such a motion.

- 6 -

1 covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Ariz.*
2 *Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz.
3 474, 490, 38 P.3d 12, 28 (2002). "The implied covenant of good faith and fair dealing
4 prohibits a party from doing anything to prevent other parties to the contract from
5 receiving the benefits and entitlements of the agreement." *Id.*

6 There is, however, no obligation under the terms of the original Loan Agreement
7 for Defendants to provide a loan modification. (Doc. 20-1, Exs. A, B.) A breach of the
8 duty of good faith can occur only if Defendants did something "to prevent [the Pyles]
9 from receiving the benefits and entitlements of the agreement." *Ariz. Laborers*, 201 Ariz.
10 at 490. Because there was no obligation, there is no breach. The Pyles' breach of good
11 faith claim premised on Defendants' failure to provide a loan modification pursuant to
12 the loan agreement is dismissed.

13 As to the other bases for the Pyles' claim (instituting improper nonjudicial
14 foreclosure and rejection of proper payments), Defendants make no argument for
15 dismissal. A breach of good faith claim based on those allegations remains.

## CONCLUSION

17 While the alleged loan modification is subject to the statute of frauds, the Pyles
18 have alleged part performance, which can be an exception to the statue of frauds.
19 Defendants' Motion to Dismiss Counts I and II is therefore denied. The Pyles have not
20 stated a claim for breach of duty of good faith based on a refusal to execute a loan
21 modification pursuant to the loan agreement, but the remainder of that claim stands.

22 **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 20)
23 is **granted in part and denied in part.**

24 Dated this 2nd day of August, 2013.

G. Murray Snow
United States District Judge